**Howard NEIL, Plaintiff-Respondent,**

v.

**Joseph J. MAYER, Sr., Defendant-Appellant.**

No. 32534.

St. Louis Court of Appeals.

Missouri.

Feb. 20, 1968.

Motion for Rehearing, or, to Modify Opinion, or to Transfer to Supreme Court Denied March 21, 1968.

Application to Transfer Denied May 13, 1968.

Armstrong, Teasdale, Kramer & Vaughan, John J. Cole, Fred Leicht, Jr., St. Louis, for defendant-appellant.

Samuel A. Goldblatt, William R. Kirby, St. Louis, for plaintiff-respondent.

SAMUEL E. SEMPLE, Special Judge.

Plaintiff sued for $15,000 damages for personal injuries alleged to have been sustained as a result of an automobile collision. The jury returned a verdict for plaintiff in the sum of $12,000. Defendant appeals from the judgment rendered on the verdict.

The case was submitted to the jury on three specifications of negligence which were failure to keep a careful lookout, defendant was following plaintiff's vehicle too closely and on the so-called rear end collision doctrine. Defendant's principal assignments of error are that there was insufficient competent evidence to support two of the three submissions of negligence, to-wit, following too closely and the rear end collision doctrine.

The accident occurred on April 24, 1964, a little before 4 P.M. in the southbound lanes on Lemay Ferry Road some distance south of Lindbergh Road in St. Louis County. At the point of the accident Lemay Ferry Road consists of two southbound lanes and two northbound lanes. The weather at the time of the accident was clear, visibility good and the pavement was dry. South of Lindbergh on the west side of Lemay Ferry Road is located a 9-0-5 Liquor Store, a Texaco filling station and an entrance to the Famous Barr South County Store.

Plaintiff's version as to the collision was as follows: Plaintiff, who was driving a taxicab, received a call about 3:30 P.M. to pick up a package at the Famous Barr downtown store and deliver it to that company's south county store on Lemay Ferry Road. He picked up the package downtown and proceeded to Lemay Ferry Road. He traveled south on Lemay Ferry Road driving in the right-hand lane next to the shoulder at a speed of approximately forty miles per hour. As he approached the intersection with Lindbergh he slowed down and as the traffic light was in his favor, he proceeded on across the intersection. He continued on south in the right-hand lane and slowed down to about 25 miles per hour looking for the driveway to turn into the Famous Barr South County Store when his vehicle was hit. Plaintiff testified that immediately prior to the accident there was no traffic in front of or alongside him, that he had not turned on his directional signal, that he had not looked in either of his rearview mirrors and did not see defendant's vehicle at any time prior to the accident or did not hear a horn sounded or brakes being applied.

Plaintiff testified that he was hit from the back and was thrown out of the right front door. He was dazed and next recalled sitting on the ground with his back to the bumper of his cab. He did not know where the vehicles came to rest after the collision and did not know what damage was done either to the taxicab or to defendant's vehicle.

Police Officer Caho, who was called to the scene of the accident, testified on behalf of plaintiff that when he arrived he observed a taxicab sitting in the northbound lane of Lemay Ferry Road and a Plymouth sitting sort of crossways in the southbound lane. That he observed loose mud and dirt on the pavement shaken loose by the impact located two feet north of the Texaco Filling Station driveway and three feet from the shoulder in the southbound lane next to the shoulder. That the location of this debris was about 500 to 550 feet south of the Lindbergh intersection and about 175 to 200 feet south of the 9-0-5 Liquor Store driveway. He also estimated that the driveway to the Famous Barr Store was about 300 feet south of the debris. The officer also testified that defendant stated to him

that he had been driving in the curb lane, had glanced over to the right for traffic coming out of the driveway and when he looked back he saw the taxicab, slammed on his brakes but couldn't stop. Officer Caho identified two photographs showing damage to the taxicab and defendant's Plymouth. Edward Miles, an employee of the Black and White Cab Company, testified for plaintiff that he received a call about the accident and arrived at the scene within an hour. He identified pictures showing the damage to plaintiff's taxicab. These photographs identified by Officers Caho and Miles showed damage to the side of the left rear fender back of the left rear wheel of the taxicab. The pictures clearly did not show any damage to the rear end of the taxicab.

Plaintiff introduced portions of a deposition of defendant as admissions against interest which were to the effect that defendant was traveling south on Lemay Ferry Road in the outside lane. There were cars in front of him when they crossed Lindbergh. After he crossed Lindbergh he looked to the right at the 9-0-5 and when he looked back there was the taxicab in front of him. That the cab was two or three car lengths away when he applied his brakes. That when he first saw the cab it was traveling about 10 miles per hour straddling both lanes going east. That he was traveling about 40 miles per hour when he applied his brakes. That the left front of his car hit the left rear side of the taxicab. That he did not see the taxicab in front of him when he crossed Lindbergh and never saw it till he looked back after glancing to the right. That the cab must have come out from the side.

The only evidence presented on behalf of defendant was the testimony of defendant himself. Defendant testified that he was headed south on Lemay Ferry Road going home from work driving his Plymouth automobile. That as he approached the Lindbergh intersection he was traveling 40 to 45 miles per hour in the right-hand lane next to the shoulder and the traffic light was in his favor. There were

cars ahead of him. He slowed down a little bit as he crossed the intersection and upon clearing the intersection he might have stepped up his speed a little. That he glanced over to the 9-0-5 Liquor Store to see if any cars were coming out and when he looked back ahead he saw the taxicab about two or three car lengths ahead of him heading east straddling the two southbound lanes with the back end of the cab in the outside lane and the front end in the inside lane. That he was traveling in the outside lane. That he applied his brakes and attempted to swerve. That the left front of his car hit the left side of the taxicab back of the rear left wheel. That his car did not strike any portion of the rear end of the taxicab. That the impact was hard causing the taxicab to spin completely around and come to rest in the northbound lanes heading south and his Plymouth coming to rest heading in a northeasterly direction across the southbound lanes.

Defendant's first assignment is that the court erred in giving Instruction No. 4 which was a verdict directing instruction for plaintiff submitting in the disjunctive defendant's failure to keep a careful lookout, or defendant was following plaintiff's taxicab too closely. The instruction was given in the proper M.A.I. form. Defendant contends that there was insufficient competent evidence to support the submission that defendant was following plaintiff's cab too closely.

■ In determining this question, the established procedure is to consider the evidence in a light most favorable to plaintiff, giving him the benefit of all favorable inferences arising therefrom and disregarding defendant's evidence except insofar as it may assist plaintiff. Sundermeyer v. Lentz, Mo., 386 S.W.2d 16, 18. A jury reasonably could find from the evidence that plaintiff was traveling south in the right-hand lane of traffic at a speed of 20 to 25 miles per hour just before and at the time of the collision. There was also evidence that defendant was also traveling

south in the right-hand lane of traffic at a speed of 40 or more miles per hour when defendant first saw plaintiff's taxicab two or three car lengths ahead of him and that defendant was unable to avoid hitting the taxicab by applying his brakes and attempting to swerve. It is concluded that the testimony as to the direction and lane of traffic in which both plaintiff and defendant were traveling plus the testimony as to the speed of both vehicles and the distance separating them when defendant first saw plaintiff's taxicab ahead of him just before the collision would support the submission to the jury that defendant was negligent in following plaintiff too closely under the circumstances and the court did not err in giving Instruction No. 4.

 Defendant next contends that the court erred in giving Instruction No. 6 submitting the issue of defendant's negligence under the rear end collision doctrine because there was insufficient competent evidence to support the instruction. In determining this question we must consider all of the evidence in the light most favorable to the plaintiff, accepting as true all that is not entirely unreasonable or contrary to physical facts or natural laws and giving to plaintiff the benefit of all favorable inferences that reasonably may be drawn from such evidence. But of course each and every fact essential to liability must be predicated upon legal and substantial evidence. Neither may any fact essential to liability be inferred in the absence of a substantial evidentiary basis. Probst v. Seyer, Mo., 353 S.W.2d 798, 802, 91 A.L.R.2d 1252. Substantial evidence is that evidence which, if true, has probative force upon the issues and from which the trier of fact can reasonably decide the case on the fact issues. Zeigenbein v. Thornsberry, Mo., 401 S.W.2d 389, 393. The question of whether the evidence in a given case is substantial is one of law for the court. Probst v. Seyer, supra.

 The rear end collision doctrine is based on the rule of law which recognizes that "if one person has his vehicle in a portion of the highway where he should have it or is entitled to have it in view of the course in which he is proceeding, and some other person traveling behind him in the same direction overtakes him and permits his vehicle to run into the rear of the one ahead, the proof of a collision under such circumstances makes out a prima facie case of specific negligence against such other person in charge of the overtaking vehicle." Todd v. Presley, Mo., 413 S.W.2d 173, 175; Snyder v. Hedges, Mo.App., 381 S.W.2d 376, 380; Jones v. Central States Oil Co., 350 Mo. 91, 164 S.W.2d 914, 918.

 Defendant argues that there was no competent or substantial evidence that defendant ran into the rear of plaintiff's taxicab which was an essential element of proof to justify a submission under the rear end collision doctrine. Clevenger v. Walters, Mo., 419 S.W.2d 102, 106. The photographs introduced by both plaintiff and defendant show that the damage to plaintiff's taxicab was to the left side near the rear and clearly do not show any damage to the rear end of the vehicle. The only evidence in the record to establish the fact that defendant did collide with the rear end of plaintiff's taxicab is the testimony of plaintiff himself. Plaintiff testified on direct examination as follows:

"Q. How far then did you travel southwardly on Lemay Ferry Road when something happened? A. Approximately two or three hundred feet. The first thing I knew something hit me and that was about the extent of it. Q. You had gone two or three hundred feet; then what happened at that time? A. Somebody hit me from the back, threw me out. * * * Q. Now, would you describe this impact, tell us what happened, Mr. Neil? A. What do you mean, in my own words? Q. Yes. A. All I know is that I was driving along there and trying to make the—approaching where I was going to turn right and somebody hit me from the rear. That's the best I know—

threw me out the right hand door and I landed on the pavement there up to the front bumper there and everything seemed like the cab was moving a little bit but I couldn't be real precise because I was a little bit unconscious there."

Plaintiff's testimony on cross-examination was:

"Q. And, you never saw the defendant prior to the collision? A. No, sir. Q. Then, how certain are you Mr. Neil, that your vehicle was struck in the rear? A. I remember that it was from the impact and I was told by a different bystander. * * * Q. Didn't you assume your cab was hit from the rear? A. I presumed it was, yes."

It is true that a case to be submissible to a jury depends on proof of facts and cannot be justified by mere conclusions of witness and also a witness may qualify his testimony in such a way as to render it of no probative value. Zeigenbein v. Thornsberry, supra. There also comes a point when statements given by a witness whether in the form of estimates or otherwise are so far removed from actual possibilities that they lose the force of bona fide estimates and honest opinions and become so manifestly incredible, irreconcilable with, and contrary to physical laws and common human knowledge that they demonstrate in and of themselves that they are made without actual knowledge and are mere conjecture, or wishful thinking and do not constitute probative evidence. Ewen v. Spence, Mo.App., 405 S.W.2d 521, 524, and cases therein cited; Lohmann v. Wabash R. Co., 364 Mo. 910, 269 S.W.2d 885, 891.

Plaintiff qualified his direct testimony that he was hit from the back or rear by saying "that's the best I know" and on cross-examination when questioned how certain he was that his vehicle was hit from the rear said that it was from the impact and what he was told by a bystander and that he "presumed" that his cab was hit from the rear. This testimony considered in the context that he never saw defend-

ant's vehicle and did not know where his cab was damaged and further considered in the light that such testimony is entirely inconsistent with the undisputed photographic evidence that there was no physical damage to the rear end of the taxicab but only to the left side near the rear, indicate a lack of knowledge in respect to the fact of a rear end collision testified to and does not constitute probative evidence. It is concluded that there was no substantial evidence presented to establish that defendant's vehicle collided with the rear end of plaintiff's taxicab. Under the circumstances here presented plaintiff did not make a submissible case under the rear end collision doctrine and the giving of Instruction No. 6 was error.

This disposition of the case makes it unnecessary to consider defendant's other contention as to the refusal to give a converse instruction in addition to the converse instructions given by the court as it is unlikely that the error which defendant claims here will occur again in a new trial.

The judgment is reversed and the cause remanded for a new trial.

ANDERSON, P. J., and WOLFE, J., concur.